Good morning, Your Honors. May it please the Court. Pause a moment to let everybody settle in and cut down on the background noise. Please proceed. May it please the Court. My name is Tom Case. I represent the appellants, Fidelity National Financial and Fidelity Express Network. I'd like to reserve about five minutes for rebuttal of the 15 minutes you've allotted me. In the Court below, Fidelity brought a fraudulent transfer lawsuit against a group of Spendthrift Trusts and some other defendants and obtained a preliminary injunction which restricted those defendants from depleting their assets during the pendency of the litigation. Pursuant to that injunction, the District Court rejected the Trust's request to invest an additional $150,000 into a company called Azura or BelAzura, which is a Chinese manufacturer of bathroom fixtures, in which the Trust had previously loaned over $1.1 million before Fidelity brought the lawsuit. In rejecting that request to further loan more money to Azura, the Court required Fidelity to post a bond of $1.1 million. The purpose of that preliminary injunction bond, which is the same purpose of every injunction bond, is to compensate the enjoined party if the Trust were to prevail at trial and could prove by a preponderance of evidence that the injunction approximately caused the damages, that is, that absent the injunction, Azura would have been able to pay back some portion of that $1.1 million. When the Trust prevailed in the trial below, the Court granted their motion to execute on the bond and awarded them the entire bond damages of $1.1 million. In doing so, the District Court committed legal error in two ways. First, the Court concluded that damages had been proven to a reasonable degree of certainty without any evidence, substantial or otherwise, of any provable damages that were caused by the injunction. I'm sorry, go ahead. Go ahead. Go ahead. Don't you want to go straight to the problem that you've got and you want us to resolve? The Court found that, I gather, and you can tell me whether I'm wrong, if you had not done what you did, the company would not have found itself in the difficulty that it found itself in, and therefore will take this bond, which you correctly say was for a different purpose. But if the Court found that the problem was caused by the actions of a client, then you have to convince us, I gather, that something is wrong with the Court's reasoning. Or you'll tell us what's wrong with the Court's reasoning. Don't you? Don't you need to go to that point rather than the fact that it wasn't used for the purpose for which the bond is normally? Yes, that and the fact that the Court – Because it's pretty clear it wasn't used for that. Except the Court said, I think, if you hadn't done this, they wouldn't have suffered the loss, they would have been able to continue to function, and they would have not suffered the damages. Yes. Isn't that where you're at? Sure. Let me address that, Your Honor. Azura was a startup bathroom fixture manufacturer based in China, and it was from its inception in 2004 money-losing company, losing approximately $200,000 per year. It was only able to operate with continued infusions of cash, much of it from the trusts, and it hadn't been able to pay back any of the $1.1 million that the trusts had loaned it prior to the lawsuit. By 2007, the date of the injunction, Azura had been in business for approximately three years, and it was still not able to operate without continued infusions of cash. And there wasn't any other party apart from the trust that was willing to loan it any money by this time, even its previous investors weren't, and that's when the trust asked the Court for an exception to the preliminary injunction to invest or loan another $150,000, which was to pay the wages of its Chinese employees and the rent on its Chinese factory for about six months. The district court erred in awarding the entire $1.1 million by implicitly assuming that had Azura stayed in business for this extra six months, had Azura, this failing business, money-losing business, been able to limp along for another six months, the trust would somehow have recouped its investment. Could I divide that into two different issues? And the first issue seems to me, was the district court clearly erroneous, clearly erred in saying that the injunction was the proximate cause of the failure of Azura? And then the second question would be, assuming the district court didn't err, then did the district court clearly err in saying the amount of provable damages was $1.1 million? Now, on that first point, I have difficulty in seeing how we could say the district court clearly erred, because there was plenty of evidence in the record that, but for the inability to fund the Azura, and it's the Chinese company, it wouldn't at least have failed right then. How can we say that the district court was clearly wrong in that conclusion? Sure. And I think you've hit the nub of the question there, is that Azura was a failing company that was losing money all along. If it was a company that was going to fail anyway, because it couldn't operate without continuing infusions of cash, by denying the $150,000, all it did was delay the date when it would have either failed or needed another infusion of cash. Yeah, but you're speculating that it would have failed. You're looking at a trend. But start-ups often have that trend, and the district court was relying on testimony about the plan they had for the trade show, and et cetera, and how they were going to turn it around and be an incredible success, which does happen occasionally for start-ups. So how can we say it was clear error that the district court relied on that testimony? Sure. The only evidence that we have is what's on Azura's financial statements prior to the injunction. That is, they were losing $200,000 a year even as the revenues were increasing. Their costs and expenses were increasing by even more. The theories that the court heard about marketing plans at trade shows and some unidentified company that was going to possibly purchase Azura for some unknown amount, that's not evidence. That's speculation. That is not something that the district court is entitled to rely on. The only evidence we have is that Azura would have continued as it had before. We actually have documents showing how much they lost. We don't have anything showing, okay, there's going to be a trade show. So how can we analyze that evidence for logical consistency or accuracy? What's the percentage likelihood that the trade show would have caused customers to materialize? You know what your opponent's going to say when they get here. The trend, there's no doubt it was losing money. But they're going to say the curve had turned, and so they were losing less and less and less. But that's not what the __________. But isn't that evidence? If that's what it showed, it would be evidence, but the evidence doesn't show they were losing less and less. The evidence showed that as their revenues went up, their costs went up even more, and on average for every single year the company was in existence, it was losing approximately $200,000 a year. What they say is that they hoped, which is nothing but a future prediction, totally speculative, that attendance at a trade show would cause unnamed customers to materialize in some unknown amount and that some unidentified company would swoop in and purchase as they're up for some unknown amount. There wasn't evidence, though, that the company would fail immediately, right? I mean, there was evidence that if but for the $150,000 or whatever it was they were planning to invest, they would have at least continued. So whatever speculation or chance or hope they had of turning things around would still have been there. But in the absence of that investment, doesn't that just immediately or the district court was entailed to rely on the testimony that that immediately caused the failure of the company? It's true that the company ceased operating when it did because it could no longer pay the wages of its Chinese employees and the rent on its Chinese factories, and that happened at the time it did because the court cut off the flow of funds from the trust, which was necessary all along from its inception for however long it went for this company to continue operating. Another way to look at this... So at least that immediate failure was approximately caused by the injunction. The timing of the ceasing of Azura's operation happened because the injunction cut off the flow of money. But if Azura was a failing company altogether, as far as any actual evidence we have shows it was going to fail without continued infusions of cash from the trust, then it's simply a matter of timing and it doesn't affect whether the trust were actually damaged. Again, damages in this case are not that Azura went out of business when it did or in the future. Let's go to the provability of the damages. Maybe you could explain why the district court was wrong in saying in the amount of damages. Yes. One way to look at this case is that unless there was some admissible evidence to prove that Azura had some value at the time of the injunction, then the trust couldn't have been damaged because all the injunction would have done was prevent the company from continuing to pour money into something that had no provable value. No provable value, no damages. Well, I thought it at least has assets, right? Well, we'll get to that. The court correctly found that it was not relying on the future profits of Azura because those were too speculative and nothing like that was admitted. The only theory proposed by the trust was that Azura had a going concern value. There was no discussion that Azura had a liquidation value if it had any, and there was no evidence of that. So the fact that it may have had assets that may have been away by its liability was not something before the court that was even argued, let alone was there any evidence of it. The only theory proposed was that Azura had a going concern value and that some unidentified company was going to buy it for this going concern value, which would be enough to pay back the trust. The problem with this is there was no evidence of any going concern value. There are principled means of measuring a company's going concern value with expert appraisers or economists, with an analysis of return on investment, with, you know, analogies to similar companies or competitors, with declarations from customers saying how much they would have bought and for how much. The only thing we have is the bald assertion that it had an undetermined, quote, going concern value. And that is purely speculation, and that's the only... So the balance sheet of the company wasn't part of the record? The balance sheet of the company showed that it was a money-losing company. If you looked at its assets and liabilities, all you could come to a conclusion of was that this company was losing money. If there was some value in that company apart from the balance sheet, it would have had to be something like a going concern value. But as I said, although there are principled means of measuring such a value, the district court made no attempt to do that. And again, unless the company had some provable value at the time of the preliminary injunction, the fact that the injunction stopped the trust from pouring more money into it is not damage. It's simply metaphorically putting the patient out of its misery before at some point it was going to die anyway. So yes, again, unless the company had some value, liquidation value, going concern value, some value, if this was not a company with provable value, then the injunction could not have damaged it. The purpose of the injunction is compensatory. It's to compensate an injured and joint party if they can prove by a preponderance of evidence that the injunction proximately caused them damages. What, in your views, is this Court's bottom line? What should the holding be? The holding should be that, first of all, there was not substantial evidence to support the judge's conclusion that damages were proven to a reasonable certainty. But we have to find clear error, right? It's a clear error standard. Well, there's two issues. One issue is should the bond have been executed at all. For that issue, the Court has to find provable damages. And that issue is reviewed de novo according to the Nintendo v. Galoo case. The second issue, whether the Court properly calculated the damages, is reviewed for clear error. So the first issue, were there any provable damages at all? Did this injunction proximately cause any damages to the trust, is an issue which is reviewed de novo. And to address your question, I would say the Court's ruling should be there was nothing but speculation to support the Court's decision that there were provable damages. And for that, under a de novo review standard, the dissemination of the money from the bond should be reversed as a matter of law. Second, although the calculation of damages is reviewed for clear error, here the Court did not even exercise its discretion to adopt a reasonable formula or even attempt a calculation. Even assuming there were some damages, it doesn't mean that Azura automatically gets the whole $1.1 million. The District Court is then supposed to look at evidence of actual numbers and apply a reasonable formula to determine how much of the $1.1 million Azura might have been able to pay back. Since the Court did not exercise discretion at all to even adopt a formula or calculate damages, I would say that that was an error of law, on the law, and should be reversed for that reason as well. Even if it is reviewed under the clear error standard, again, since there was no calculation, it would be clearly erroneous as well. Do you want to save your few seconds for rebuttal? Yes. Good morning, Your Honors. David Bass for Appellee. The trust defendants with Ms. Janine Come. You have to admit this is a somewhat unusual situation, don't you? Enforcing an injunction bond is fairly standard, but … Usually … Yes, Your Honor. … the bond is to protect from damages caused by the injunction. And, Your Honor, the District Court made a proper Nintendo analysis in first in having that bond issued and then executing on the bond in a very conservative way. The Court … I don't know about conservative. Strong word. When you took it all. Because there were provable damages, and it's not clear error for the Court to determine that the damages were measured by the amount at risk in the amount of the loans and the investment by the trust defendants. But what evidence was there the money would ever have come back? The Court made the determination, and I think that was really the focus of what we just heard. I understand. The Court presumably made the determination. That's why I asked what evidence was there to support that determination. It's hard for me to figure out how the money comes back, given the track history of this enterprise. The Court, in weighing the evidence, insensibly, the Court sitting and listening to the trial … And my question was to ask you what that evidence was. Yes, Your Honor. The evidence in the record is replete with reasons why that it was appropriately done. That's why you should have dealt with it. Proof that there was $1.1 million put into the company. Proof that the trustee had a stable business plan for a reserve. Proof that they were working with an established designer. Proof that Specter, the trustee for the trust, required management and had management controls over the company. Proof that Clive Lubner, an established designer and marketer in the industry of furniture, was working with the company and had got chains of distribution. Proof that contributions by Xiaowei Kui and Victor Cabral, designers and manufacturing personnel with experience in China, were working closely and were helping the company build. Proof that Lubner gave the company exposure. Proof that there was substantial growth in the company. The income statements, the balance sheets, are before the court. They're before this court, they're before the district court, and the court sensibly weighed that evidence. That evidence showed that this isn't a struggling startup. This is a company that many starting R&D companies, startup companies, or any companies would be envious of. It started out, its first year, it had about $50,000 in revenue. The next year, it went up to $539,000 in revenue, and then $559,000. And the month before the injunction, it was growing to exceed the last year's annual revenue. It was poised to be an excellent company and one that could satisfy its debts, be a valuable company for the trust. The trust wanted that company for its business reasons, that it could pay back its debts, that it could be in existence. The court made the determination. At the time, the money, the court cut it off. It was probably worthless because it had poured so much money into the pot. Isn't that what the record showed? That the company was worthless, Your Honor? No, not that the company was worthless. That this company had survived by an influx of capital. Somebody had to keep pouring money into it. The court enjoined further money going into it. And when you look at what it was worth at that point, what would we see? What we looked at at that point is that it was a viable company that was thriving, that had growth in revenues of 10 times from its first year in production, that it had orders in place, that evidence was there, that it had a manufacturing facility, the evidence was submitted to the district court, that it was selling all the products that GMA, its owned and established furniture manufacturer in China, was working. It had a customer base. It was working, it was growing, and it needed this to continue going. It is also relevant that as soon as the injunction was issued, that stopped. So let me get you, those sorts of statements go to the first, in my mind, the first prong, which is did the injunction cause any damages at all? And your theory, as I understand it, is the company had some, that there was evidence supporting the district court's finding that the company could survive, possibly pay back the loan, so there was damage in killing it off at that point. But I'm also concerned about the district court's finding that there was $1.1 million worth of damages because I didn't see in the record, maybe you can point me to it, any information about what the value of the $1.1 million investment or loans, I guess, was at that time. Because there's, typically we don't say that the value of the loan is its base amount. It depends on the interest rate, the likelihood of repayment, the risk, the collateral, and there were not, there wasn't any evidence I saw going to the value of the loan. So how much you were damaged? The record shows, the evidence shows that the court made a determination that the damages were not based on some speculative valuation on the company. There was no evidence by the plaintiff on what they thought the value of the company was. The court considered that because the injunction ended this business, which was, the evidence showed, a viable business, a business that was working, it had growth in revenues, it had the likelihood of paying back these loans, that because it stopped the business, the trust could never recoup this money and it lost that money. But what would have been the value, and maybe you just agree that there isn't any evidence, if the owners of the $1.1 million loan, your clients, had tried to sell that loan, I mean, they clearly could not have sold the loan for $1.1 million, I assume, or at least there wasn't any evidence in the record showing that. Is that correct? There was no evidence on that, and the court did not need to go into that speculative process. So why not? I mean, if what you lost was the $1.1 million, what your clients lost was the $1.1 million value of the loan, I mean, you would look at what was the value of the loan before the injunction and what was the value after the injunction and the company failed, and I didn't see anything in the record going to that. That is an alternative way to look at the facts, look at the business situation. There are many ways to look at the business situation of any business. That would be one way to do it. The court reasonably determined and sensibly determined, and it's certainly not clear air, even if someone could disagree with the economic analysis, let's say, that the district court did on determining damages, but it was sensible based on the evidence to see that the money went in, that it was viable, that it had a track record, that its earnings were growing. But it didn't have a track record. The reason the money had to go in is that the company needed funding. It wasn't throwing off cash. It needed cash to keep its doors open. That's what presumably led to the failure of the business when the money wasn't forthcoming. So at some point, for there to have been value in these previously made loans, the company has to turn the corner, and I guess I'm looking for the same thing that Judge Acuda is asking about. I'm not sure what there is to support the proposition the company would have turned the corner such that it would have been a position to pay back the money that had been previously lent, plus presumably the additional funds that would have been put in if the plug hadn't been pulled. Where's the evidence of turning the corner? The court considered the evidence of the growth in revenues, growth in sales, the establishment of a stream for products, the development of a marketing plan, everything in place for the company to work. The company was working. The fact that a company for two years of its existence requires some funding to nurture it through the beginning phase of its business. You say two years of its existence. For the totality of its existence, it has required the funds. For the totality? It never had not required the funds. Well, the injunction came at a point in time. It didn't require the ample funds that would make it a losing proposition. It invested in the equipment to create the furniture in China. That's not chasing losses. That's making the type of capital improvements that every business needs to do. Did the district court make a determination that the company was going to succeed and pay back the loan? Did it make that finding? That is inherent in the court's weighing of the facts and considering when the court viewed all of the facts. The district court implicitly made the finding that this company was going to succeed and pay back the loans in full. Is that correct? That appears to be a part of the court's ruling. It didn't have to expressly make it, but the court concluded that the trust defendants lost their investment when it did because of the injunction and that it had established enough of a business to show that it would have the track record to go forward and to complete its obligations to pay back and to be in existence to return those funds. So your theory would be that in order to say the district court was wrong, we would have to say that it was a clear error for the district court to determine that the company was definitely going to succeed and pay back the loans and be in a position to pay back the loans. Is that correct? Yes, Your Honor. Okay, thank you. That it is a clear error standard. It's not clearly erroneous for the facts that were presented to the court for that court to decide that this company was viable and it made that determination to go forward, even if it's a start-up company, even if it invested in capital. It wasn't covering the absence of business. Its business was growing, the types of things that you would want to see in a business that's moving forward. You say it was growing. What's the evidence that it was growing? The growth in its sales, Your Honor. The fact that every product that was produced from its factory at GMA sold. The fact that its books and records showed provable sales going up ten times from its first year in existence, that was an excellent performance and it had everything in place to have that business move forward. The only... On the other side, the minute the injunction entered, this business failed. That's correct. And if it was such a valuable, going, productive business, why didn't it go somewhere else and get the funds? It couldn't borrow money from anybody at the time the injunction was cut off, could it? That would be a difficult thing for any business to do. That is why it was... So the answer is no. It was unable to do so, Your Honor. Yes, it couldn't borrow. It was unable to do so. But the evidence that the district court considered was that it had its products ready to go, it had its factory set up, it was ready to establish its business, and if it could have funded those deliveries, the production, to fulfill those obligations, it would sustain its operations. And that's what the court determined, and it is that court's discretion to evaluate those facts and sensibly come to a conclusion, even if, Your Honor, could argue the other side of the fact. Either way... You could argue either way. In our case, we're going to disavow the case. And what we've got here is a very peculiar situation. A bond was posted to protect any damage that the company suffered by virtue of the injunction. And the injunction destroyed the business. And suddenly the $1.1 million was gone. That's correct, Your Honor. The injunction destroyed the business. And when we look at the record, what do we see the $1.1 million? How did we arrive at the $1.1 million? And we'll have to say nothing shows how it arrived, except that business failed and the money was gone. The evidence shows that the $1.1 million reflects the amount of money that was invested into the company by the trust, so it is provable. It's an excess of that. The damages were greater. The evidence shows, and the court considered, that the injunction was the cause that ended that business. And the evidence shows that the company was growing and thriving and needed to keep, to perform, to fulfill its orders and would have succeeded had it not had the injunction and the restrictions of the injunction on what it was to do. Now, that finding by the court, that determination by the court, is a determination that the court sensibly made and shall not be disturbed, except for the correctness. You know what the difficulty is? This business that you said was going so well, doing so well, owed money to Fidelity. That's why Fidelity posted the bond. It was trying to collect money that was owed to it. Isn't that right? Absolutely not, Your Honor. This was not a judgment debtor in the other proceeding. This was a separately established trust. It was never a judgment debtor in any proceeding, never has been. This was a separate trust. They included it in the RICO action, saying it had conspired. I don't know what the facts are of this record. The facts were determined by the court below after a jury trial and then a separately determined court trial where the court did not invalidate to spend their trust. So what was Fidelity trying to do? Fidelity was trying to link in this trust as if it were an alter ego of the parents of the beneficiaries of the trust. So it was trying to link it in, and it got an injunction, and we haven't even talked about whether that injunction should have been issued, but it was on evidence that was rather sketchy and later determined to be wrong. The injunction was issued based on a story told by Fidelity that these defendant trusts were the alter egos of other judgment debtors. A jury trial established that there were no provable claims. The court determined that the trusts are not the alter ego. So that has been resolved completely in its favor. The trust defendants were never responsible by virtue of the trial on the merits and by the plain reading of their existence. They were never a part of that. Thank you, Your Honors. Thank you. Very briefly, the amount that the trust loans to Azura, that one line item on their balance sheet cannot be a way to value a company or value the loan. You would have to look at other things. By ruling that there were damages in this case, the trial court essentially read proximate cause out of the standard and converted the injunction bond from a device which is supposed to provide compensation to an injured party into a guarantee of recovery. Thereby ---- Mr. Bass tells us that the court implicitly made such a determination. He understands that's a necessary link. I take it ---- Yes. What's the basis of your contention that the court did not make such an implicit determination? The court made the determination. Yes, I would agree the court did implicitly and erroneously make the determination that Azura would have somehow, limping along for the next six months and only able to survive with infusions of cash, would have somehow been able to pay back the whole $1.1 million. Yes, implicitly the court must have found that. I agree. But the only thing it could rely on was speculation that this business would be bought by some unidentified white knight at some undetermined price or that possibly a future trade show which would have caused some unknown number of customers to materialize. In other words, yes, the court found that, but it was based on nothing but speculation and damages cannot be based purely on speculation. Otherwise, basically the bond becomes a windfall for the defendants and a punishment to fidelity for losing the case or you would think maybe a wager on who's going to win the case. Again, the purpose of the injunction bond should be to compensate a party who can prove the damages were approximately caused by the injunction, not that a failing business that was going to fail anyway happened to go out of business when it did. Thank you. Thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Farris, Clifton, Ikuta